T.C. Summary Opinion 2006-93


UNITED STATES TAX COURT


GUNASUNDRAN R. PILLAY AND KALAIVANI GOVENDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 5872-04S, 17168-04S.  Filed June 8, 2006.


Gunasundran R. Pillay and Kalaivani Govender, pro sese.

<u>Margaret A. Martin</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  These cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petitions were filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $4,586 and $3,929 in petitioners' 2000 and 2001 Federal income taxes, respectively. After concessions by petitioners,[1] the issue for decision is whether petitioners are entitled to expense deductions in the taxable years 2000 and 2001 related to a sole proprietorship.

## Background

These two cases were consolidated for purposes of trial, briefing, and opinion. Some of the facts have been stipulated, and they are so found. The stipulation of facts and the supplemental stipulation of facts with attached exhibits, as well as an additional exhibit admitted during trial, are incorporated herein by this reference. Petitioners Gunasundran R. Pillay (Mr. Pillay) and Kalaivani Govender are married and resided in Citrus Heights, California, when the petition in each docket was filed. Unless otherwise indicated, all references to petitioner are to Mr. Pillay.

---

[1] Petitioners concede that a $1,175 State income tax refund they received in 2001 is taxable. Petitioners also concede certain expense deductions claimed on their Schedule C, Profit or Loss From Business, which are discussed infra. The remaining adjustments in the notices of deficiency are computational; therefore, we do not address them.

During the years at issue, petitioner was a 50-percent owner of Worldwide Technology Solutions, Inc. (the corporation).[2] The corporation placed consultants with businesses and government agencies for a fee. Petitioner also operated a similarly named sole proprietorship called Worldwide Technology Solutions (WTS). Petitioner described WTS as a business consulting firm. He explained that WTS provided direct consulting services, whereas the corporation provided consultants. It is not clear why WTS and the corporation had nearly identical names.

In addition to his involvement with the corporation and WTS, petitioner worked full time for the California State Board of Equalization (SBOE) as a program manager. SBOE was also one of the corporation's clients in 2000 and 2001. Petitioner could not recall whether WTS had any clients in 2000. WTS had one client in 2001, a company called "3com". WTS performed a feasibility study for 3com and made a proposal to update 3com's business software. 3com did not accept the proposal and instead contracted with the corporation for a consultant. WTS was not paid for the study it performed.

The corporation was operated from an office in Sacramento. WTS was operated from petitioners' home, but it also leased

---

[2] The corporation's tax liability is not at issue. At trial, however, the parties made frequent reference to the corporation for purposes of comparing it with the sole proprietorship. We therefore include information about the corporation necessary to address the parties' arguments.

office space from the corporation.  Petitioner explained that although WTS was a home-based business, he wanted more professional surroundings when he met WTS clients.  WTS paid one-half of the rent for the Sacramento office.

The corporation reported gross receipts of $922,843 in 2001.  WTS had no gross income during the years at issue.  On their jointly filed 2000 and 2001 Federal income tax returns, petitioners claimed WTS-related expense deductions totaling $45,520 and $18,353, respectively.[3]  Respondent issued a notice of deficiency for each year disallowing the deductions in full. Before trial, petitioners conceded certain expense deductions but also claimed additional expense deductions beyond those claimed on their tax returns.  Petitioners now claim the following Schedule C expense deductions:[4]

|                          | 2000    | 2001    |
|--------------------------|---------|---------|
| Advertising              | $248    | ----    |
| Car and truck            | 6,085   | $6,085  |
| Commissions and fees     | 38,372  | ----    |
| Rent                     | 852     | 12,973  |
| Supplies                 | 2,236   | 1,030   |
| Travel                   | ----    | 2,018   |
| Meals and entertainment  | 571     | 1,926   |
| Utilities                | 897     | 1,717   |
| Totals                   | 49,261  | 25,749  |

[3] The $18,353 figure includes $12,488 that petitioners originally claimed as unreimbursed employee business expenses on Schedule A, Itemized Deductions, but which they now claim as additional Schedule C expense deductions.

[4] All amounts are rounded to the nearest dollar.

## Discussion

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiating the amount and purpose of the claimed deduction. See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to respondent under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Petitioners therefore bear the burden of proof.

Section 162(a) generally allows a deduction for ordinary and necessary business expenses. To qualify as an allowable deduction under section 162(a), an item must: (1) Be paid or incurred during the taxable year; (2) be for carrying on any trade or business; (3) be an expense; (4) be a necessary expense; and (5) be an ordinary expense. Commissioner v. Lincoln Sav. &

Loan Association, 403 U.S. 345, 352 (1971); FMR Corp. & Subs. v. Commissioner, 110 T.C. 402, 414 (1998).

Section 274(d) imposes strict substantiation requirements for listed property as defined in section 280F(d)(4), gifts, travel, entertainment, and meal expenses. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Listed property includes passenger automobiles and any other property used as a means of transportation. Sec. 280F(d)(4)(A)(i) and (ii). To obtain a deduction for a listed property, travel, meal, or entertainment expense, a taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony the amount of the expense, the time and place of the use, the business purpose of the use, and, in the case of entertainment, the business relationship to the taxpayer of each person entertained. Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

According to respondent, petitioners have not demonstrated that WTS was a separate business activity in the years at issue. Respondent therefore contends that none of petitioners' claimed deductions were paid or incurred in carrying on a trade or business. Respondent notes that WTS and the corporation had similar names and shared office space, that WTS had only one client, and that WTS had no gross income, whereas the corporation

had gross receipts of $922,843 in 2001.  Respondent argues that to the extent expenses were paid or incurred, they were either petitioners' personal expenses or expenses of the corporation.

Petitioner contends that WTS was an active business that was distinct from the corporation and that WTS paid or incurred the expenses in question.  Although WTS had few clients in 2000 and 2001, petitioner contends WTS "was making proposals all over the country" trying to generate business.

We agree with respondent that it is unclear whether WTS was a separate business.  WTS reported no gross receipts in the years at issue.  It conducted limited activities and had only one client, which eventually chose to do business with the corporation.  Although petitioner claims WTS was attempting to generate business, he did not provide WTS brochures, marketing materials, or other evidence of WTS's sales efforts.  Petitioner introduced a balance sheet and income statement for the corporation, but petitioner did not produce any accounting records for WTS.  While petitioner maintains that WTS was separate from the corporation, he testified that he "made no distinction between * * * [his] employment and * * * [his] home-based business because * * * they were one and the same thing." It is not entirely clear what petitioner meant by this comment;

however, at the very least his testimony casts doubt on his assertion that WTS was a separate business.[5]

Even if WTS was a separate business, each of the claimed expense deductions fails to satisfy one or more requirements to be deductible. With respect to travel, meals, and entertainment expenses, petitioner has not met the substantiation requirements of section 274(d). Although petitioner introduced a number of receipts, they do not describe the business purpose of the expenses or the business relationship to petitioner of the persons he entertained. See sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., supra.

Petitioner testified that he purchased a vehicle that he used exclusively for WTS-related business, even though title to the vehicle was held in petitioners' names rather than in WTS's name. Because the vehicle was listed property as defined in section 280F(d)(4)(A), deductions related to the vehicle are also subject to the heightened substantiation requirements of section 274(d). Petitioner did not keep a mileage log, however, or otherwise corroborate his testimony concerning the business purpose of the vehicle. See sec. 274(d); sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

---

[5] Petitioner's belief that WTS was related to his employment with SBOE may explain why he originally claimed the $12,488 of additional Schedule C deductions as unreimbursed employee expenses. See supra note 3.

With respect to advertising and supplies expenses, petitioner has not established the business purpose of these expenditures or that they were WTS's expenses, as opposed to personal expenses or the corporation's expenses. The same is true for utilities expense. For example, petitioner introduced a number of invoices from AT&T Wireless. The invoices are addressed to petitioner, however, and do not reference WTS. In addition, some of the invoices list petitioners' home address, while others list the office in Sacramento that WTS shared with the corporation. Petitioner did not introduce evidence linking the telephone number listed on the invoice to WTS, such as a WTS business card or WTS letterhead. Nor did petitioner provide evidence of his personal utilities expense or the corporation's utilities expense, which may have been circumstantial evidence that WTS used the AT&T Wireless service and incurred the expense in question.

WTS paid one-half of the rent for the office space it shared with the corporation. While rent generally is an ordinary business expense, petitioner testified that the office space was "only a professional front" for WTS; i.e., WTS used it solely to meet clients. Given the limited use that WTS made of the office space, as well as the dearth of clients in the years at issue, it appears that this expenditure may not have been a necessary expense. See <u>Alondra Indus., Ltd. v. Commissioner</u>, T.C. Memo.

1996-32 ("Excessive rental payments do not constitute ordinary and necessary business expenses and are therefore not deductible."). Only the reasonable portion of the rent is allowed as a deduction. <u>Hopkins v. Commissioner</u>, T.C. Memo. 2005-49. There is nothing in the record which indicates that any portion of the rent paid by WTS was reasonable.

Finally, petitioner testified that the commissions and fees expense of $38,372 in 2000 represents the cost of computer software that he commissioned a company called "R Systems" to develop. The software was designed to aid in the electronic filing of State sales tax returns. Petitioner had hoped to sell or lease the software to SBOE but was unable to do so.

For the same reasons discussed <u>supra</u>, it is not clear that WTS paid or incurred the cost of acquiring the software. Even if WTS did pay or incur this cost, software generally must be depreciated rather than currently deducted. See secs. 167(f), 197; sec. 1.167(a)-14(b)(1), Income Tax Regs. The period for depreciation of an asset begins when the asset is placed in service. Sec. 1.167(a)-10(b), Income Tax Regs. The record does not indicate when, if ever, WTS placed the software in service. Accordingly, petitioners cannot deduct any costs associated with the software. See <u>Hahn v. Commissioner</u>, T.C. Memo. 1990-43.

We conclude that the WTS-related expense deductions that petitioners claim are not ordinary and necessary business

expenses.  Accordingly, respondent's determinations are sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.